UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
ODE OBATAIYE,                      :
                                   :
            Plaintiff,             :      Civ. No. 14-5462 (FLW)(TJB)
                                   :
      v.                           :
                                   :
GARY LANIGAN et al.,               :      **OPINION**
                                   :
            Defendants.            :
_____:

**FREDA L. WOLFSON, Chief Judge:**

## I.     INTRODUCTION

Plaintiff, Ode Obataiye ("Obataiye"), is a state prisoner presently incarcerated at East Jersey State Prison, in Rahway, New Jersey. He is proceeding *pro se* with the proceeded portions of a Fourth Amended Complaint asserting claims under 42 U.S.C. § 1983. (ECF No. 47.) Presently before the Court is an unopposed motion by defendants, Gary Lanigan ("Lanigan"), Charles E. Warren ("Warren"), Jimmy Barnes ("Barnes"), Michelle Ricci ("Ricci"), and Dr. Flora DeFilippo ("DeFilippo") (collectively, "Defendants"), seeking summary judgment in their favor under Federal Rule of Civil Procedure 56. (ECF No. 77.) For the following reasons, the motion is granted, and judgment is summarily granted to Defendants.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A. Underlying Facts

As the underlying allegations are well known to the parties, I include here only the circumstances directly relevant to Obataiye's active claims. Obataiye is serving a criminal sentence imposed by the Connecticut courts. (ECF No. 47 ¶ 1; *see also* Ans., ECF No. 56, ¶ 1.) After being charged with assaulting a guard in a Connecticut prison, Obataiye was

administratively transferred to New Jersey State Prison ("NJSP") on January 17, 2008. (ECF No. 47 ¶¶ 11–14; *see also* ECF No. 56 ¶¶ 11–14.) Upon his arrival at NJSP, Obataiye was assigned to the Management Control Unit ("MCU"),[1] and he was initially placed on close observation, which apparently involved constant observation and the confiscation of his shoes. (ECF No. 47 ¶¶ 15–23; ECF No. 56 ¶¶ 15–23.) Despite efforts to be reassigned to the general population of the prison via quarterly and annual reviews, Obataiye remained in the MCU for six and a half years, finally being reassigned to the general population in August or September 2014. (ECF No. 47 ¶¶ 79–87; ECF No. 56 ¶¶ 79–87.) While in MCU, Obataiye experienced extreme temperatures and other discomforts. (ECF No. 47 ¶¶ 25–43; *see also* ECF No. 56 ¶¶ 25–43.)

Obataiye filed one inmate remedy form regarding cold temperatures in his cell on January 18, 2011. (ECF No. 77-2 ¶ 16; Ex. H, ECF No. 77-11, at ECF p. 2.) The staff response indicated that the prison was "waiting on parts for N/C Hot Water Heating System." (ECF No. 77-11 at ECF p. 2.) Obataiye did not file any administrative appeal of this grievance. (*Id.*; *see also* ECF No. 77-2 ¶ 17.)[2]

### B. Procedural History and Prior Motion Practice

As I fully recounted the tortuous procedural history of this case in the opinion granting in part and denying in part Defendants' motion to dismiss Obataiye's Fourth Amended Complaint, (ECF No. 53), I include here only a brief overview of the course of this litigation. Obataiye

---

[1] The MCU at NJSP is a close custody unit to which inmates are assigned if they pose a substantial threat (1) to the safety of others, (2) of damage to or destruction of property, or (3) of interrupting the operation of a state correctional facility. *See* N.J. Admin. Code § 10A:5-1.3; N.J. Admin. Code tit. 10a, ch. 5, subch. 2.

[2] Defendants' summary judgment motion includes, as required by Local Civil Rule 56.1, a Statement of Undisputed Material Facts, including citations to evidentiary documents. (ECF No. 77-2.) As Obataiye filed no opposition to the motion and no response to the Statement of Undisputed Material Facts, the facts recited therein are deemed undisputed. *See* L. Civ. R. 56.1(a).

originally commenced this action on February 1, 2013, by filing a Verified Complaint with the Superior Court of New Jersey, Mercer County, Law Division. (Notice of Removal, Ex. A, Ver. Compl., ECF No. 1-1, at ECF pp. 5–36.) That Complaint was removed to this Court as *Obataiye v. Lanigan*, Civ. No. 13-4323 (FLW) (TJB), then remanded to state court, and then the First Amended Complaint[3] was removed to this Court again as the pleading in the present action, (*see* ECF No. 1).

Obataiye filed a Second Amended Complaint in December 2015 with leave of the Court. (ECF No. 23.) On September 26, 2016, I granted in part and denied in part a motion by Defendants to dismiss the Second Amended Complaint. (ECF Nos. 28 & 29.) The Court dismissed with prejudice Obataiye's claims against Defendants in their official capacities and his demands for declaratory relief. (ECF No. 28 at 10–12.) I further dismissed without prejudice Obataiye's conspiracy claim. (*Id.* at 12–14.) Though I found that Obataiye's due-process claim implicated a constitutional liberty interest, I dismissed the claim and related claims for supervisory liability on the basis that Obataiye had failed to plead facts supporting an argument that he did not receive due process in being placed or maintained in the MCU. (*Id.* at 14–20.) I permitted Obataiye's claims concerning extreme temperatures to proceed against defendants Warren and Ricci but dismissed those claims as against the other defendants and insofar as they concerned other conditions of confinement. (*Id.* at 22–27.)

Shortly thereafter, Obataiye filed a Third Amended Complaint alleging only due-process violations. (ECF No. 34). He quickly followed this with an all-inclusive Fourth Amended Complaint, the substantive allegations of which are largely the same as those he asserted in his

---

[3] I note that this was at least the third pleading Obataiye had filed during all underlying proceedings, but the first operative pleading under this docket number. Nonetheless, I refer to this as the First Amended Complaint, and refer to successive pleadings accordingly, as this is consistent with the parties' references to the various pleadings.

Second Amended Complaint. (*See* ECF No. 47.) He alleged that he was consistently subjected to extreme cold in the winter and extreme heat in the summer, causing various health problems, and he also claimed that his cell was unsanitary. (*Id.* ¶¶ 25–67, 171–179.) Obataiye asserted that he was not released from MCU until September 2014 despite previously completing programs intended to facilitate release to the general population. (*Id.* ¶¶ 68–74, 79–85.) He challenged both his initial placement in MCU and the ongoing decisions not to release him. (*Id.* ¶¶ 90–92, 126–156.)

On June 18, 2018, I granted in part and denied in part an unopposed motion by Defendants to dismiss the Fourth Amended Complaint. (ECF No. 53 & 54.) Specifically, I found that Obataiye had alleged facts sufficient to support a due-process claim, at least against DeFilippo, Barnes, and Warren. (ECF No. 53 at 13–18.) I rejected Defendants' argument that Obataiye's claims must be dismissed for failure to exhaust administrative remedies because exhaustion is an affirmative defense to be pleaded by the defendant. (*Id.* at 16.) I again found that Obataiye had adequately alleged that Warren and Ricci were deliberately indifferent to the problem of extreme temperatures, but dismissed the remaining Eighth Amendment claims. (*See id.* at 18–22.) Applying the relevant two-year statute of limitations, however, I dismissed the claims that accrued prior to February 1, 2011, as untimely. (*See id.* at 17, 22.)

Following that motion practice, the parties engaged in discovery. Once discovery was complete, Defendants filed the motion for summary judgment that is presently before the Court. (ECF No. 77.) When Obataiye had not filed any opposition to the summary judgment motion within his time to do so, I issued a Memorandum and Order providing him an additional 30 days to file an opposition and warning Obataiye that, if he failed to do so, the motion would be

4

decided as unopposed. (ECF No. 82.) Obataiye has never responded to that Order or filed any opposition papers.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Kaucher v. County of Bucks*, 455 F.3d 418, 422–23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

A movant for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While a defendant moving for summary judgment must support assertions by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), the movant is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex Corp.*, 477 U.S. at 323. Instead, "the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant has shown an absence of material factual dispute, the non-movant then bears the burden to "designate specific facts showing that there is a

genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the non-movant may not rest upon the mere allegations or denials of the pleadings. *Id.* at 324; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994), *aff'd* 67 F.3d 291 (3d Cir. 1995). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

Local Civil Rule 56.1 requires that a motion seeking summary judgment include a statement of material facts not in dispute and that an opponent of summary judgment shall file "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). The rule further provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.* Although a motion for summary judgment may not be granted by default, merely because it goes unopposed, *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990), the motion may be granted if the undisputed facts warrant judgment as a matter of law, *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003); *Houston v. Township of Randolph*, 934 F. Supp. 2d 711, 723 (D.N.J. 2013), *aff'd* 559 F. App'x 139 (3d Cir. 2014).

## IV. ANALYSIS

The PLRA provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *Ball v. Famiglio*, 726

F.3d 448, 456 (3d Cir. 2013), *abrogated on other grounds by Coleman v. Tollefson*, 135 S. Ct. 1759 (2015). The exhaustion requirement is mandatory and, thus, bars an inmate from bringing such a claim without first properly exhausting available administrative remedies. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 85, 93–94 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Coulston v. Glunt*, 665 F. App'x 128, 132 (3d Cir. 2016).

Failure to exhaust administrative remedies is an affirmative defense, which the defendant bears the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003). "Furthermore, the defendant must prove that the prisoner-plaintiff failed to exhaust *each* of his claims. There is no 'total exhaustion' rule permitting dismissal of an entire action because of one unexhausted claim." *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013) (emphasis added); *see also Jones*, 549 U.S. at 219–24. Exhaustion of administrative remedies under the PLRA "turns on the remedies and grievance procedures that the particular prison has available." *Rinaldi v. United States*, 904 F.3d 257, 272 (3d Cir. 2018).

In a declaration under penalty of perjury, Jessica Smith ("Smith"), an executive assistant at NJSP, explains that procedures for administrative remedies at the prison are set out in an Inmate Handbook. (Ex. E, Declaration of Jessica Smith, ECF No. 77-8 at ECF pp. 2–4.) Smith attaches a "true and accurate copy of excerpts from the NJSP Inmate Handbook, with revision dated October 2007, detailing the administrative remedy procedure available to the inmate population at NJSP." (*Id.* at ECF pp. 2–3.) The Handbook lays out a procedure for the submission of an Inmate Request System and Remedy Form, noting that the form must include

7

"the inmate's name, SBI number, institution, housing unit and date of request/complaint" and further emphasizing that "[i]t is important that the information clear [sic], complete and easy to read and understand as possible in order that the problem being addressed be clearly understood." (Declaration of Jessica Smith, Ex., ECF No. 77-8, at ECF pp. 105–06.) It notes that each form should address only one problem or request and that "[m]ultiple issues submitted on one form will cause you [sic] form ***NOT BE*** [sic] ***PROCESSED***." (*Id.* at 106.) The Handbook further states, "Under normal circumstances the *INMATE REQUEST SYSTEM AND REQUEST FORM* will be processed within thirty (30) working days," and it instructs inmates that "[a]dditional forms addressing the same problem or concerns are NOT to be submitted before the end of this 30 day working period, and will not be processed if received." (*Id.* at ECF pp. 106–07.)

In a section regarding the appeal process, the Handbook states that an inmate "may appeal a staff response to [an] Inmate Request System and Remedy Form" and that the appeal must be submitted "within ten (10) days of the date [the] response is returned." (*Id.* at ECF p. 107.) It specifies that "an appeal with a decision rendered ***completes*** the process at the institutional level." (*Id.*) Thus, Smith explains that "[i]nmates are required to utilize the Inmate Remedy System before applying to the Courts for relief." (ECF No. 77-8 at ECF p. 3.) She states that, "[i]f the inmate is dissatisfied with the [staff response], the inmate must appeal the response by completing Part 4 (Inmate Appeal) and re-submitting it within ten (10) days receipt of same." (*Id.* at ECF pp. 3–4.) Smith explains that, "[w]hen the inmate receives the response to his administrative appeal, his administrative remedies are exhausted." (*Id.* at ECF p. 4.)

Regarding Obataiye, Smith states,

> At the request of the New Jersey Office of the Attorney
> General, personnel from New Jersey State Prison conducted a

8

> search of all records maintained by NJSP concerning
> Administrative Remedy Forms submitted by Inmate Ode Obataiye
> at New Jersey State Prison during the period of 2011 through 2014.
> The single Inmate Remedy Forms submitted by Obataiye
> between 2011 and 2014 relate to the allegations in his Complaint
> regarding temperature was timely responded to and Obataiye took
> no further action and did not submit an appeal.

(*Id.* (paragraph numbers omitted).)

Defendants have included as an exhibit "a true and correct copy of Plaintiff's Inmate Remedy Forms located at New Jersey State Prison between 2011-2012." (*See* ECF No. 77-3 ¶ 10; Ex. H, ECF No. 77-11.) This exhibit includes only one Remedy Form seemingly relating to Obataiye's claims in this action. This form, dated January 18, 2011, complains,

> A couple of weeks ago the heat was on then all of a sudden it was
> off. It has since become very cold in the unit making it very
> difficult to even get some sleep at night. Can you please look into
> this issue and try to ameliorate the problem. Thank you very
> much, Ode Obataiye.

(ECF No. 77-11 at ECF p. 2.) This form indicates that it was returned to Obataiye on March 28, 2011, with the response, "waiting on parts for N/C Hot Water Heating System." (*Id.*) Part 4 of the Remedy Form, which a prisoner must complete to take an administrative appeal, is blank. (*Id.*)

Based on these submissions, I conclude that Obataiye's active claims are barred by the PLRA as unexhausted. Smith's declaration, as well as the Inmate Handbook, establish that the NJSP administrative-remedy system generally requires a prisoner to administratively appeal a grievance form before the claim may be considered exhausted.[4] As Smith has declared under penalty of perjury, Obataiye submitted only one grievance that was related to his claims in this

---

[4] I note, however, that if a prisoner receives no response to an initial grievance, an appeal of the non-response may be unnecessary for exhaustion. *See Small*, 728 F.3d at 273–75.

action during the relevant period,[5] and he did not take any administrative appeal from the response he received. Obataiye has filed nothing to contradict these facts, nor any opposition to the motion at all. Accordingly, Defendants have borne their burden of showing that the active claims are unexhausted, and Obataiye has not shown any questions of fact that would preclude granting summary judgment. Accordingly, the summary judgment motion is granted. As I grant Defendants' motion on the basis of Obataiye's failure to exhaust his claims, I do not reach the other arguments they have raised.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 77) is GRANTED based on Obataiye's failure to exhaust administrative remedies as required by the PLRA, and judgment is granted in Defendants' favor. An appropriate order follows.

DATED: September 27, 2019            /s/ Freda L. Wolfson
                                                                     FREDA L. WOLFSON
                                                                     U.S. Chief District Judge

---

[5] I note that Defendants have not made any representation as to whether Obataiye filed any grievances prior to 2011. Obataiye has never given any indication that he did file relevant grievances before 2011, nor did he oppose the dismissal of his pre-2011 claims as time barred. In any case, even in the event that Obataiye had filed earlier grievances, it is unclear that such grievances regarding claims that necessarily fell before statute-of-limitations cutoff could function to exhaust administrative remedies as to subsequently accruing claims Nor has there been any assertion that the continuing-violation doctrine could be applied to preserve Obataiye's older claims.